## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | **Chapter 7** |
| **HARBORVIEW ENTERPRISES, LLC** | ) | **Case No.: 13-06089-8-RDD** |
| Debtor | ) | |
| | ) | |
| | ) | |
| **George Mason Oliver, Chapter 7 Trustee** | ) | |
| **for HARBORVIEW ENTERPRISES,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Adversary Proceeding No:** |
| **v.** | ) | _____ |
| | ) | |
| **WELLS FARGO BANK, NATIONAL** | ) | |
| **ASSOCIATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

George Mason Oliver, Chapter 7 Trustee for Harborview Enterprises, LLC ("Plaintiff" or "Trustee"), by and through undersigned counsel, files this Complaint against Wells Fargo Bank, National Association ("Defendant"), and in support thereof, states as follows:

1.    This adversary proceeding relates to the Chapter 7 bankruptcy case of the Debtor, Case No: 13-06089-8-RDD, filed with the United States Bankruptcy Court for the Eastern District of North Carolina on September 27, 2013.

2.    The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 151, and 157, and this matter is a core proceeding pursuant to 28 U.S.C. §157.  The Court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984, by the United States District Court for the Eastern District of North Carolina.

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

### IDENTIFICATION OF PARTIES

4.    On or about September 27, 2013, Harborview Enterprises, LLC (the "Debtor") filed a Voluntary Petition under Chapter 7 of Title 11 of the United States Code.

5.    The Plaintiff is the duly qualified and acting Trustee in this case.

6.      Upon information and belief, Defendant is a corporation duly organized, incorporated, and operating under the laws of the State of South Dakota, and the successor-in-interest to Wachovia Bank, National Association (hereinafter referred to as "Wachovia").

## FACTUAL ALLEGATIONS

7.      On or about May 15, 1992, Jernigan Nursing Home Services, Inc. executed a Warranty Deed conveying three tracts of real property to Harborview Enterprises, a North Carolina Partnership, and the Warranty Deed was recorded in Book 686, Page 308, in the office of the Register of Deeds of Carteret County, North Carolina.  A copy of the Warranty Deed is attached hereto as Exhibit A.

8.      On or about March 12, 1993, Jernigan Nursing Home Services, Inc. executed a Deed of Correction to Harborview Enterprises, a North Carolina General Partnership, removing the third tract of land included in the Warranty Deed.  The Deed of Correction was recorded in Book 710, Page 129, in the Office of the Register of Deeds of Carteret County, North Carolina. The Deed of Correction is attached hereto as Exhibit B.  The Deed and Deed of Correction are hereinafter referred to as (the "Partnership Deed").

9.      On or about July 3, 2002, Harborview Enterprises, LLC was formed by the filing of Articles of Organization at the office of the North Carolina Secretary of State and a copy of the Articles of Organization are attached hereto as Exhibit C.

10.      On or about March 24, 2006, Harborview Enterprises, LLC, by and through its Member Manager, Patricia K. Jernigan, executed a Deed of Trust in favor of Wachovia in the original maximum principal amount of $1,500,000.00. The Deed of Trust was recorded in Book 1163, Page 298, in the office of the Register of Deeds of Carteret County, North Carolina on March 24, 2006 (the "Deed of Trust").  The Deed of Trust is attached hereto as Exhibit D.

11.      On or about March 24, 2006, Harborview Enterprises, LLC, by and through its Member Manager, Patricia K. Jernigan, executed a second Deed of Trust in favor of Wachovia in the original maximum principal amount of $300,000.00. The Deed of Trust was recorded in Book 1163, Page 299, in the office of the Register of Deeds of Carteret County, North Carolina on March 24, 2006 (the "Second Deed of Trust").  The Second Deed of Trust is attached hereto as Exhibit E.

12.      The Deed of Trust and the Second Deed of Trust purport to grant Wachovia a lien on two tracts of real property located in Morehead City, Carteret County, North Carolina, as

more particularly described on an "Exhibit A" which is attached to both the Deed of Trust and the Second Deed of Trust.

13.     On or about January 14, 2010, Harborview Enterprises, a North Carolina General Partnership, executed a Warranty Deed to Harborview Enterprises, LLC, conveying two tracts of real property located in Morehead City, Carteret County, North Carolina.  The Warranty Deed was recorded in Book 1332, Page 42, in the Office of the Register of Deeds of Carteret County, North Carolina, on January 21, 2010, and it is attached hereto as Exhibit F (the "Harborview LLC Deed").  Tract One and Tract Two, as described on the Harborview LLC Deed are hereinafter referred to as the "Property."

14.     The Debtor became the record owner of the Property on January 21, 2010.

15.     The real property described in the Partnership Deed, the Harborview LLC Deed, the Deed of Trust, and the Second Deed of Trust are the same real property.

16.     On the date that Harborview Enterprises, LLC executed the Deed of Trust and the Second Deed of Trust, Harborview Enterprises, LLC did not own the Property.

17.     On the date that Harborview Enterprises, LLC executed the Deed of Trust and the Second Deed of Trust, the real property described in the Deed of Trust and the Second Deed of Trust was owned by Harborview Enterprises, a North Carolina General Partnership.

18.     The Deed of Trust and the Second Deed of Trust were not re-recorded after January 21, 2010, the date that Harborview Enterprises, LLC became the record owner of the Property.

**<u>FIRST CAUSE OF ACTION:  AVOIDANCE OF LIENS</u>**
**<u>PURSUANT TO 11 U.S.C. § 544</u>**

19.     The allegations set forth in paragraphs 1 through 18 are re-alleged and incorporated as if fully set forth herein.

20.     The Deed of Trust and the Second Deed of Trust are not in the chain of title of the Debtor and are not liens on the Property.

21.     The Deed of Trust and the Second Deed of Trust are not liens on real property of the Debtor and are invalid and unenforceable.

22.     Pursuant to 11 U.S.C. §544, the asserted liens of the Deed of Trust and Second Deed of Trust are unenforceable against the Trustee and should be avoided because the liens were not properly perfected prior to the filing of the bankruptcy by the Debtor.

23.    The avoided liens should be preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 550.

**WHEREFORE**, Plaintiff respectfully prays of the Court as follows:

1.    That the Court issue an Order stating that the Deed of Trust and the Second Deed of Trust are not in the chain of title of the Debtor and are not liens on the Property.

2.    That the Court issue an Order stating that the Deed of Trust and the Second Deed of Trust are invalid and unenforceable against the Debtor and are avoided by the Trustee.

3.    That the Court issue an Order stating that the Defendant does not have a secured claim against the Debtor.

4.    That the Court issue an Order stating that the real property described in the Deed of Trust and Second Deed of Trust are preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §550; and

5.    For such other and further relief as this Court deems just and proper under the circumstances.

This the 2nd day of September, 2014.

s/Jonathan E. Friesen
JONATHAN E. FRIESEN
N.C. State Bar No. 31535
OLIVER FRIESEN CHEEK, PLLC
PO Box 1548
New Bern, NC  28563
Telephone:  (252) 633-1930
Facsimile:  (252) 633-1950
Email:  jef@ofc-law.com

STATE OF NORTH CAROLINA

COUNTY OF CARTERET

Parcel Number: _See below in margin_

WARRANTY DEED

THIS DEED, made this the 14th day of May, 1992, by JERNIGAN NURSING HOME SERVICES, INC., hereinafter called "GRANTOR," to HARBORVIEW ENTERPRISES, a North Carolina general partnership, whose address is 812 Shepard Street, hereinafter called "GRANTEE;"

WITNESSETH THAT:

GRANTOR, for TEN DOLLARS ($10) and other valuable consideration, hereby acknowledged as paid and received, has bargained and sold, and by these presents does grant, bargain, sell and convey (subject to limitations, conditions, and provisions - if any - listed below) to GRANTEE, his heirs and assigns, certain land described as follows:

STATE OF NORTH CAROLINA        COUNTY OF CARTERET        TOWNSHIP OF MOREHEAD

TRACT ONE:  Beginning at a point which is the intersection of the northern right-of-way of Shepard Street with the eastern right-of-way of 9th Street; and running thence for a first call with the eastern right-of-way margin of 9th Street N 5° 45' E 108.0 feet; thence S 84° 15' E 100 feet; thence S 5° 45' W 7.8 feet; thence S 84° 15' E 8.50 feet; thence S 5° 45' W 27.17 feet; thence N 84° 15' W 21.13 feet; thence S 6° 7' W 72.03 feet; thence N 84° 15' W 36.90 feet; thence S 5° 45' W 1.0 feet to a point in the northern right-of-way margin of Shepard Street; and thence with said right-of-way margin N 84° 15' W 50.0 feet to the point of beginning.

_13013E0508_

TRACT TWO:  Being the southern eighty (80) feet of Lot 15, Block 71, in accordance with the official map of the Town of Morehead City as recorded in Map Book 1, page 139, Office of the Register of Deeds of Carteret County, and being more particularly described as beginning at a point in the western right-of-way margin of 9th Street which is S 5° 45' W 20 feet from the northeast corner of said Lot 15; and running thence for a first call with the western right-of-way margin of 9th Street S 5° 45' W 80 feet; thence with the southern line of Lot 73 N 84° 15' W 100 feet; thence N 5° 45' E 80 feet; and thence S 84° 15' E 100 feet to the point of beginning.

_13013E0407_

TRACT THREE:  Being all of Lot 16 and the northernmost 25 feet of Lots 1 and 2, Block 71, in accordance with the official map of Morehead City as recorded in Map Book 1, page 139, Carteret County

_13013E0408_

Prepared By: Nelson W. Taylor, III, Attorney at Law, Morehead City, NC

BOOK ___686___  PAGE ___308___

Registry, and being more fully described as follows:  Beginning at a point in the western right-of-way margin of 9th Street, said point being the southeast corner of Lot 15, Block 71; running thence with the western right-of-way margin of 9th Street S 05° 45' W 75.0 feet to a point; thence leaving the right-of-way margin and running N 84° 15' W 100.0 feet to a point in the eastern margin of a 10 feet alley; running thence with the eastern margin of said 10 feet alley N 05° 45' E 75.0 feet to a point; running thence S 84° 15' E 50.0 feet to a point being the southwest corner of Lot 15, Block 71; continuing thence S 84° 15' E 50.0 feet to the point and place of beginning.

TO HAVE AND TO HOLD (subject to limitations, conditions, restrictions and provisions - if any - listed above), said land, and all privileges and appurtenances thereto belonging, to GRANTEE, his heirs, successors and assigns, forever.

And GRANTOR covenants with GRANTEE that he is seized of said premises in fee and has the right to convey in fee simple; that the same are free and clear of all encumbrances (except those - if any - listed above), and that he does hereby forever warrant and will forever defend the same against the lawful claims of all whomsoever.

Wherever used herein, the singular shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders as the context may require.

IN TESTIMONY WHEREOF, GRANTOR has signed and sealed this Deed.

ATTEST:

_Doris B. Jernigan_
Doris B. Jernigan, President

_Kaye Jernigan_
Kaye Jernigan, Assistant Secretary

BOOK __686__ PAGE __308__

STATE OF NORTH CAROLINA
COUNTY OF CARTERET

     I, a Notary Public of said County and State do hereby certify
that Kaye Jernigan personally appeared before me this date and acknowledged
that she is Assistant Secretary of Jernigan Nursing Home Services, Inc., a
corporation, the foregoing instrument was signed in its name by its
President, sealed with its corporate seal, and attested by herself as its
Assistant Secretary.

     WITNESS my hand and Notarial Seal this the 15th day of May, 1992.

My commission expires:
August 10, 1996

                             Notary Public


NORTH CAROLINA, CARTERET COUNTY
The foregoing certificate(s) of _Pamela D. Thorell_
is (are) certified to be correct. This instrument was pre-
sented for registration and recorded in this office in
Book _686_ Page _308_.
This _15_ day of _May_, 19_92_ at _2:45_ O'clock _P.M._
                Sharon Piner
                Register of Deeds
           By _____
                Assistant, Deputy


BOOK _686_ PAGE _308_

*Prepared by: N.W. Taylor*

STATE OF NORTH CAROLINA

COUNTY OF CARTERET

Parcel Numbers: 13013E0508
and 13013E0407

DEED OF CORRECTION

THIS DEED, made this the 12th day of March, 1993, by JERNIGAN NURSING HOME SERVICES, INC., hereinafter called "GRANTOR," to HARBORVIEW ENTERPRISES, a North Carolina general partnership, whose address is 812 Shepard Street, Morehead City, North Carolina 28557, hereinafter called "GRANTEE;"

### WITNESSETH THAT:

GRANTOR, for TEN DOLLARS ($10) and other valuable consideration, hereby acknowledged as paid and received, has bargained and sold, and by these presents does grant, bargain, sell and convey (subject to limitations, conditions, and provisions - if any - listed below) to GRANTEE, his heirs and assigns, certain land described as follows:

STATE OF NORTH CAROLINA     COUNTY OF CARTERET     TOWNSHIP OF MOREHEAD

TRACT ONE:  Beginning at a point which is the intersection of the northern right-of-way of Shepard Street with the eastern right-of-way of 9th Street; and running thence for a first call with the eastern right-of-way margin of 9th Street N 5° 45' E 108.0 feet; thence S 84° 15' E 100 feet; thence S 5° 45' W 7.8 feet; thence S 84° 15' E 8.50 feet; thence S 5° 45' W 27.17 feet; thence N 84° 15' W 21.13 feet; thence S 6° 7' W 72.03 feet; thence N 84° 15' W 36.90 feet; thence S 5° 45' W 1.0 feet to a point in the northern right-of-way margin of Shepard Street; and thence with said right-of-way margin N 84° 15' W 50.0 feet to the point of beginning.

TRACT TWO:  Being the southern eighty (80) feet of Lot 15, Block 71, in accordance with the official map of the Town of Morehead City as recorded in Map Book 1, page 139, Office of the Register of Deeds of Carteret County, and being more particularly described as beginning at a point in the western right-of-way margin of 9th Street which is S 5° 45' W 20 feet from the northeast corner of said Lot 15; and running thence for a first call with the western right-of-way margin of 9th Street S 5° 45' W 80 feet; thence with the southern line of Lot 73 N 84° 15' W 100 feet; thence N 5° 45' E 80 feet; and thence S 84° 15' E 100 feet to the point of beginning.

This correction deed is made to correct the deed recorded in Book 686, page 308, Carteret County Registry, to omit Tract Three in that deed as the Grantor does not own Tract Three.

Prepared By: Nelson W. Taylor, III, Attorney at Law, Morehead City, NC

③

BOOK 710 PAGE 129

**EXHIBIT B**

TO HAVE AND TO HOLD (subject to limitations, conditions, restrictions and provisions - if any - listed above), said land, and all privileges and appurtenances thereto belonging, to GRANTEE, his heirs, successors and assigns, forever.

And GRANTOR covenants with GRANTEE that he is seized of said premises in fee and has the right to convey in fee simple; that the same are free and clear of all encumbrances (except those - if any - listed above), and that he does hereby forever warrant and will forever defend the same against the lawful claims of all whomsoever.

Wherever used herein, the singular shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders as the context may require.

IN TESTIMONY WHEREOF, GRANTOR has signed and sealed this Deed.

ATTEST:

Doris B. Jernigan, President

Kaye Jernigan, Assistant Secretary

STATE OF NORTH CAROLINA
COUNTY OF CARTERET

I, a Notary Public of said County and State do hereby certify that Kaye Jernigan personally appeared before me this date and acknowledged that she is Assistant Secretary of Jernigan Nursin Home Services, Inc., a corporation, the foregoing instrument was signed in its name by its President, sealed with its corporate seal, and attested by herself as its Assistant Secretary.

WITNESS my hand and Notarial Seal this the 15th day of March, 1993.

My commission expires:
August 10, 1996

Notary Public

BOOK 770 PAGE 129

NORTH CAROLINA, CARTERET COUNTY

The foregoing certificate(s) of _Pamela D. Shorell_

Is (are) certified to be correct. This instrument was presented for registration and recorded in this office in

Book _710_ Page _129_.

This _17_ day of _March_ 19 _93_ at _12:35_ O'clock _P_ M.

Sharon Piner

Register of Deeds

By _Delores Malloy_

Assistant, Deputy

BOOK _710_ PAGE _129_

22 179 5167

SOSID: 637036
Date Filed: 7/3/2002 9:37 AM
Elaine F. Marshall
North Carolina Secretary of State

State of North Carolina
Department of the Secretary of Sta
LIMITED LIABILITY COMPANY
ARTICLES OF ORGANIZATION

Pursuant to Section 57C-2-20 of the General Statutes of North Carolina, the undersigned does hereby submit these Articles of Organization for the purpose of forming a limited liability company.

1. The name of the limited liability company is: Harborview Enterprises, LLC

2. The latest date on which the limited liability company is to dissolve is: January 2, 2050

3. The name and address of each organizer executing these articles or organization is as follows (at least two persons must executed this document; attached additional pages if necessary):

    Nelson W. Taylor, III          Pamela D. Thorell
    610 Arendell Street            610 Arendell Street
    Morehead City, NC 28557        Morehead City, NC 28557

4. The street address and county of the initial registered office of the limited liability company is:

    Number and Street _____ 812 Shepard Street _____

    City, State, Zip Code Morehead City, NC 28557 County ___ Carteret _____

5. The mailing address if different from the street address of the initial registered office is: _____ Same _____

6 The name of the initial registered agent is: __ Kaye R. Jernigan _____

7. Check one of the following:

    _____(i) Member-managed LLC: all of the members by virtue of their status
            as members shall be managers of this limited liability company

    _X_(ii)Member-managed LLC: except as provided by N.C.G.S. Section 57C-3-
           20(a), the members of this limited liability company shall not be
           managers by virtue of their status as members.

8. Any other provisions which the limited liability company elects to include are attached.

9. These articles will be effective upon filing, unless a date and/or time is specified: _____

This the 25th day of June, 2002.

_____          _____
        Signature                        Signature

_____          _____
 Nelson W. Taylor, III ORGANIZER       Pamela D. Thorell
                                          ORGANIZER

**EXHIBIT C**

Melanie Arthur              ., 10P
CARTERET COUNTY
JL Date 03/24/2006      Time 11:09:00
GR 1163298              Page 1 of 10

NORTH CAROLINA, CARTERET COUNTY
This instrument and this certificate are duly filed at the
date and time and in the Book and Page shown on the
first page hereof.

Melanie Arthur, Register of Deeds
By _____
Asst./Deputy, Register of Deeds

Return to Taylor & Taylor

## DEED OF TRUST

**FOR BANK USE ONLY:**
SATISFACTION: The Obligations secured by the within Deed of Trust has been satisfied in full, this the
_____ day of _____, _____.

Signed: _____

_____

_____

_____

PREPARED BY: Jennifer O'Farrell
RETURN TO: Collateral Maintenance NC 6038
Wachovia Bank, National Association
P.O. Box 2705
Winston Salem, NC 27101-2705

This DEED OF TRUST (hereafter referred to as "Deed of Trust") made March 24, 2006 by and among HARBORVIEW ENTERPRISES, LLC, whose address is 812 Shepard Street, Morehead City, North Carolina 28557 ("Grantor"), TRSTE, Inc., a Virginia corporation qualified to do business in North Carolina, whose address is 301 South Tryon Street, Charlotte, North Carolina 28202 ("Trustee"), and the owner and holder of a promissory note, WACHOVIA BANK, NATIONAL ASSOCIATION, a national banking association, whose address is Charlotte, North Carolina 28202 ("Bank").

### W I T N E S S E T H :

To secure payment and performance of obligations under a Promissory Note (the "Note") of even date herewith, in the amount of $1,000,000.00, made by Grantor payable to Bank, this Deed of Trust, any present or future Letters of Credit issued by Bank for the account of Grantor, other loan documents as defined in the Note (the "Loan Documents"), and swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Bank or any of its affiliates and Grantor, all other indebtedness of Grantor to Bank whenever borrowed or incurred, whether or not reasonably contemplated by the parties hereto as of the date hereof, and any renewals, extensions, novations, or modifications of the foregoing (collectively the "Obligations"), and in consideration of these premises and for other consideration, Grantor does grant and convey unto Trustee, as trustee for Bank and Bank's affiliates, in fee simple, all of

545724 (Rev 18.0)          PCI435232XXXX001          CDDOTMXXXX          mii_main.doc
DOTM




**EXHIBIT D**

Grantor's right, title and interest now owned or hereafter acquired in and to each of the following (collectively, the "Property"): (i) all those certain tracts of land in the County of Carteret, State of North Carolina described in EXHIBIT A attached hereto and made part hereof (the "Land"); (ii) all buildings and improvements now or hereafter erected on the Land; (iii) all fixtures attached to the Land or any buildings or improvements situated thereon; and (iv) all estates, rights, tenements, hereditaments, privileges, rents, issues, profits easements, and appurtenances of any kind benefiting the Land; all means of access to and from the Land, whether public or private; and all water and mineral rights.

In the event that Grantor is the owner of a leasehold estate with respect to any portion of the Property and Grantor obtains a fee estate in such portions of the Property, then, such fee estate shall automatically, and without further action of any kind on the part of the Grantor, be and become subject to the security title and lien of this Agreement.

TO HAVE AND TO HOLD the Property and all the estate, right, title and interest, in law and in equity, of Grantor's in and to the Property unto Trustee, its successors and assigns, in fee simple, forever.

IN TRUST, HOWEVER, that if all Obligations are timely paid and performed and each and every representation, warranty, agreement, and condition of this Deed of Trust, the other Loan Documents, and any swap agreements are complied with and abided by, this Deed of Trust and the estate hereby created shall cease and be null, void, and canceled of record at the request and expense of Grantor, and if Default occurs, Trustee is authorized to foreclose and sell the Property under power of sale or by judicial proceeding according to applicable law and as provided herein.

Grantor WARRANTS AND REPRESENTS that Grantor is lawfully seized of the Property, in fee simple, absolute, that Grantor has the legal right to convey and encumber the same, and that the Property is free and clear of all liens and encumbrances. Grantor further warrants and will forever defend all and singular the Property and title thereto to Trustee, Bank and Bank's successors and assigns, against the lawful claims of all persons whomsoever.

To protect the security of this Deed of Trust, Grantor further represents and agrees with Trustee and Bank as follows:

**Payment of Obligations.** That the Obligations shall be timely paid and performed.

**Future Advances.** This Deed of Trust is given to secure not only existing Obligations, but also future advances, including obligations under swap agreements made, and future swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) entered into with Bank or any of its affiliates, within 15 years of the date of this Deed of Trust to the same extent as if such future advances and swap agreements are made on the date of the execution of this Deed of Trust. The principal amount that may be so secured may decrease or increase from time to time, but the total amount so secured at any one time shall not exceed 1,500,000.00, plus all interest, costs, reimbursements, fees and expenses due under this Deed of Trust and secured hereby.Grantor shall not execute any document that impairs or otherwise impacts the priority of any existing or future Obligations secured by this Deed of Trust. The amount of present Obligations secured hereby is $1,000,000.00.

**Grant of Security Interest in Personal Property.** This Deed of Trust constitutes a security agreement under the UCC and shall be deemed to constitute a fixture financing statement. Grantor hereby grants a security interest in any personal property included in the Property. On request of Bank, Grantor will execute one or more Financing Statements in form satisfactory to Bank and will pay all costs and expenses of filing the same in all public filing offices, where filing is deemed desirable by Bank. Bank is authorized to file Financing Statements relating to the Property without Grantor's signature where permitted by law. Grantor appoints Bank as its attorney-in-fact to execute such documents necessary to perfect Bank's security interest on Grantor's behalf. The appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain outstanding.

Nothing herein obligates Bank to provide credit in excess of the Obligations.

BOOK ___1163___ PAGE ___298___

**Leases, Subleases and Easements.** Grantor shall maintain, enforce and cause to be performed all of the terms and conditions under any lease, sublease or easement which may constitute a portion of the Property. Grantor shall not, without the consent of Bank (which consent shall not be unreasonably withheld or delayed), enter into any new lease of all or any portion of the Property, agree to the cancellation or surrender under any lease of all or any portion of the Property, agree to prepayment of rents, issues or profits (other than rent paid at the signing of a lease or sublease), modify any such lease so as to shorten the term, decrease the rent, accelerate the payment of rent, or change the terms of any renewal option; and any such purported new lease, cancellation, surrender, prepayment or modification made without the consent of Bank shall be void as against Bank.

**Required Insurance.** Grantor shall maintain with respect to the Property: (i) during construction of any improvements on the Property, "all-risk" builders risk insurance which must include windstorm, hail damage, fire and vandalism (non-reporting Completed Value with Special Cause of Loss form), in an amount not less than the completed replacement value of the improvements under construction, naming Bank as mortgagee and loss payee; (ii) upon completion of construction, upon occupancy of any improvements, and at all other times, insurance against loss or damage by fire and other casualties and hazards by insurance written on an "all risks" basis, including malicious mischief coverage, in an amount not less than the replacement cost thereof, including coverage for loss of rents or business interruption if applicable, naming Bank as loss payee and mortgagee; (iii) if the Property is required to be insured pursuant to the National Flood Reform Act of 1994, and the regulations promulgated thereunder, flood insurance is required in the amount equal to the lesser of the loan amount or maximum available under the National Flood Insurance Program, but in no event should the amount of coverage be less than the value of the improved structure, naming Bank as mortgagee and loss payee. If, after closing, the Property (or any part thereof) is remapped and if the vertical improvements are determined to be located in a special flood hazard area, Grantor must obtain and maintain a flood insurance policy. If, within forty-five (45) days of receipt of notification from Bank that the Property has been reclassified by FEMA as being located in a special flood hazard area, Grantor has not provided sufficient evidence of flood insurance, Bank is mandated under federal law to purchase flood insurance on behalf of Grantor, and Bank will add the associated costs to the principal balance of the Note. If the land or any portion thereof is located in a special flood hazard area, this Agreement may be terminated by Bank at its sole option; (iv) as applicable, insurance which complies with the workers' compensation and employers' liability laws of all states in which Grantor shall be required to maintain such insurance; and (v) liability insurance providing coverage in such amount as Bank may require but in no event less than $1,000,000.00 combined single limit, naming Bank as an additional insured; and (vi) such other insurance as Bank may require from time to time.

All property insurance policies shall contain an endorsement or agreement by the insurer in form satisfactory to Bank that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Grantor and the further agreement (within both the property and liability policies) of the insurer waiving rights of subrogation against Bank, and rights of set-off, counterclaim or deductions against Grantor.

All insurance policies shall be in form, provide coverages, be issued by companies and be in amounts satisfactory to Bank. At least 30 days prior to the expiration of each such policy, Grantor shall furnish Bank with evidence satisfactory to Bank that such policy has been renewed or replaced or is no longer required hereunder. All such policies shall provide that the policy will not be canceled or materially amended without at least 30 days prior written notice to Bank. In the event Grantor fails to provide, maintain, keep in force, and furnish to Bank the policies of insurance required by this paragraph, Bank may procure such insurance or single-interest insurance in such amounts, at such premium, for such risks and by such means as Bank chooses, at Grantor's expense; provided however, that Bank shall have no responsibility to obtain any insurance, but if Bank does obtain insurance, Bank shall have no responsibility to assure that the insurance obtained shall be adequate or provide any protection to Grantor.

BOOK 1163 PAGE 298

**Insurance Proceeds.** After occurrence of any loss to any of the Property, Grantor shall give prompt written notice thereof to Bank.

In the event of such loss all insurance proceeds, including unearned premiums, shall be payable to Bank, and Grantor hereby authorizes and directs any affected insurance company to make payment of such proceeds directly to Bank and not to Bank and Grantor jointly. Bank is hereby authorized by Grantor to make proof of loss if not promptly made by Grantor, settle, adjust or compromise any claims for loss or damage under any policy or policies of insurance and Grantor appoints Bank as its attorney-in-fact to receive and endorse any insurance proceeds to Bank, which appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain unsatisfied. Grantor shall pay the costs of collection, including attorneys' fees, of insurance proceeds payable on account of such damage or destruction. Grantor shall have no claim against the insurance proceeds, or be entitled to any portion thereof, and all rights to the insurance proceeds are hereby assigned to Bank as security for payment of the Obligations.

In the event of any damage to or destruction of the Property, Bank shall have the option of applying or paying all or part of the insurance proceeds to (i) the Obligations in such order as Bank may determine, (ii) restoration, replacement or repair of the Property in accordance with Bank's standard construction loan disbursement conditions and requirements, or (iii) Grantor. Nothing herein shall be deemed to excuse Grantor from restoring, repairing and maintaining the Property as required herein.

**Minimum Standards.** In addition to the requirements set forth in the Loan Documents, all surveys, insurance, title policies, construction documents, environmental reports, payment and performance bonds, and any other due diligence or additional documents required in connection with this Loan, shall comply with Bank's minimum standards in place from time to time for such documents, which shall be provided in writing by Bank to Borrower upon request.

**Impositions; Escrow Deposit.** Grantor will pay all taxes, levies, assessments and other fees and charges imposed upon or which may become a lien upon the Property under any law or ordinance (all of the foregoing collectively "Impositions") before they become delinquent and in any event in the same calendar year in which they first become due. Upon request of Bank, Grantor shall add to each periodic payment required under the Note the amount estimated by Bank to be sufficient to enable Bank to pay, as they come due, all Impositions and insurance premiums which Grantor is required to pay hereunder. Payments requested under this provision shall be supplemented or adjusted as required by Bank from time to time. Such funds may be commingled with the general funds of Bank and shall not earn interest. Upon the occurrence of a Default, Bank may apply such funds to pay any of the Obligations.

**Use of Property.** Grantor shall use and operate, and require its lessees or licensees to use and operate, the Property in compliance with all applicable laws (including, for example, the Americans with Disabilities Act and the Fair Housing Act) and ordinances, covenants, and restrictions, and with all applicable requirements of any lease or sublease now or hereafter affecting the Property. Grantor shall not permit any unlawful use of the Property or any use that may give rise to a claim of forfeiture of any of the Property. Grantor shall not allow changes in the stated use of Property from that disclosed to Bank at the time of execution hereof. Grantor shall not initiate or acquiesce to a zoning change of the Property without prior notice to, and written consent of, Bank.

**Maintenance, Repairs and Alterations.** Grantor shall keep and maintain the Property in good condition and repair and fully protected from the elements to the satisfaction of Bank. Grantor will not remove, demolish or structurally alter any of the buildings or other improvements on the Property (except such alterations as may be required by laws, ordinances or regulations) without the prior written consent of Bank. Grantor shall promptly notify Bank in writing of any material loss, damage or adverse condition affecting the Property.

**Eminent Domain.** Should the Property or any interest therein be taken or damaged by reason of any public use or improvement or condemnation proceeding ("Condemnation"), or should Grantor receive

BOOK __1163__    PAGE __298__

any notice or other information regarding such Condemnation. Grantor shall give prompt written notice thereof to Bank. Bank shall be entitled to all compensation, awards and other payments or relief granted in connection with such Condemnation and, at its option, may commence, appear in and prosecute in its own name any action or proceedings relating thereto. Bank shall be entitled to make any compromise or settlement in connection with such taking or damage. All compensation, awards, and damages awarded to Grantor related to any Condemnation (the "Proceeds") are hereby assigned to Bank and Grantor agrees to execute such further assignments of the Proceeds as Bank may require. Bank shall have the option of applying or paying the Proceeds in the same manner as insurance proceeds as provided herein. Grantor appoints Bank as its attorney-in-fact to receive and endorse the Proceeds to Bank, which appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain unsatisfied.

**Environmental Condition of Property and Indemnity.**   Grantor warrants and represents to Bank, except as reported by Grantor to Bank in writing, that: (i) Grantor has inspected and is familiar with the environmental condition of the Property; (ii) the Property and Grantor, and any occupants of the Property, are in compliance with and shall continue to be in compliance with all applicable federal, state and local laws and regulations intended to protect the environment and public health and safety as the same may be amended from time to time ("Environmental Laws"); (iii) the Property is not and has never been used to generate, handle, treat, store or dispose of, in any quantity, oil, petroleum products, hazardous or toxic substances, hazardous waste, regulated substances or hazardous air pollutants ("Hazardous Materials") in violation of any Environmental Laws; (iv) no Hazardous Materials (including asbestos, mold or lead paint in any form) are located on or under the Property or emanate from the Property; (v) there are no unregistered underground storage tanks on the Property that are subject to any underground storage tank registration laws or regulations; (vi) no notice has been received with regard to any Hazardous Material on the Property; (vii) no action, litigation or proceeding is pending or to Grantor's knowledge threatened which seeks to enforce any right or remedy against Grantor or the Property under any Environmental Law; and (viii) all licenses, permits and other governmental or regulatory actions necessary for the Property to comply with Environmental Laws shall be obtained and maintained and Grantor shall assure compliance therewith.

Further, Grantor represents to Bank that no portion of the Property is a protected wetland. Grantor agrees to notify Bank immediately upon receipt of any citations, warnings, orders, notices, consent agreements, process or claims alleging or relating to violations of any Environmental Laws or to the environmental condition of the Property and shall conduct and complete all investigations and all cleanup actions necessary to comply with the Environmental Laws and to remove, in accordance with Environmental Laws, any Hazardous Material from the Property.

Grantor shall indemnify, hold harmless, and defend Bank and Trustee from and against any and all damages, penalties, fines, claims, suits, liabilities, costs, judgments and expenses, including attorneys', consultants' or experts' fees of every kind and nature incurred, suffered by or asserted against Bank or Trustee as a direct or indirect result of: (i) representations made by Grantor in this Section being or becoming untrue in any material respect; (ii) Grantor's violation of or failure to meet the requirements of any Environmental Laws; or (iii) Hazardous Materials which, while the Property is subject to this Deed of Trust, exist on the Property.   Bank shall have the right to arrange for or conduct environmental inspections of the Property from time to time (including the taking of soil, water, air or material samples). The cost of such inspections made after Default or which are required by laws or regulations applicable to Bank shall be borne by Grantor.   However, Grantor's indemnity shall not apply to any negligent or intentional act of Bank which takes place after foreclosure or satisfaction of this Deed of Trust.   These indemnification obligations are in addition to General Indemnification provisions set forth hereafter. Grantor's Obligations under this section shall continue, survive and remain in full force and effect notwithstanding the repayment of the Obligations, a foreclosure or exercise of power of sale under this instrument, a delivery of a deed in lieu of foreclosure, a cancellation or termination of record of this instrument and the transfer of the Property.

**Appraisals.**   Grantor agrees that Bank may obtain an appraisal of the Property when required by the regulations of the Federal Reserve Board or the Office of the Comptroller of the Currency, or any

BOOK ⎯1163⎯       PAGE ⎯298⎯

other regulatory agency or at such other times as Bank may reasonably require.  Such appraisals shall be performed by an independent third party appraiser selected by Bank.  The cost of such appraisals shall be borne by Grantor.  If requested by Bank, Grantor shall execute an engagement letter addressed to the appraiser selected by Bank.  Grantor's failure or refusal to sign such an engagement letter, however, shall not impair Bank's right to obtain such an appraisal.  Grantor agrees to pay the cost of such appraisal within 10 days after receiving an invoice for such appraisal.

**Inspections.**  Bank, or its representatives or agents, are authorized to enter at any reasonable time upon any part of the Property for the purpose of inspecting the Property and for the purpose of performing any of the acts it is authorized to perform under the terms of this Deed of Trust.

**Liens and Subrogation.**  Grantor shall pay and promptly discharge all liens, claims and encumbrances upon the Property.  Grantor shall have the right to contest in good faith the validity of any such lien, claim or encumbrance, provided:  (i) such contest suspends the collection thereof or there is no danger of the Property being sold or forfeited while such contest is pending; (ii) Grantor first deposits with Bank a bond or other security satisfactory to Bank in such amounts as Bank shall reasonably require; and (iii) Grantor thereafter diligently proceeds to cause such lien, claim or encumbrance to be removed and discharged.

Bank shall be subrogated to any liens, claims and encumbrances against Grantor or the Property that are paid or discharged through payment by Bank or with loan proceeds, notwithstanding the record cancellation or satisfaction thereof.

**Waiver of Grantor's Rights.**  To the fullest extent permitted by law, Grantor waives the benefit of all laws now existing or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the Property, (ii) in any way extending the time for the enforcement of the collection of the Note or the debt evidenced thereby or any of the other Obligations, and any rights to hearing prior to the exercise by Bank of any right, power, or remedy herein provided to Bank.

To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or seek to take the benefit or advantage of any law now or hereafter in force providing for any exemption (including homestead exemption), appraisement, valuation, stay, extension or redemption, and Grantor for themselves and their respective heirs, devisees, representatives, successors and assigns, and for any and all persons claiming any interest in the Property, to the extent permitted by law, hereby waive and release all rights of valuation, appraisement, redemption, stay of execution, the benefit of all exemption laws, notice of election to mature or declare due the whole of the secured indebtedness and marshalling in the event of foreclosure of the liens hereby created.  Grantor further waives any and all notices including, without limitation, notice of intention to accelerate and of acceleration of the Obligations.

**Payments by Bank.**  In the event of default in the timely payment or performance of any of the Obligations, Bank, at its option and without any duty on its part to determine the validity or necessity thereof, may pay the sums for which Grantor is obligated.  Further, Bank may pay such sums as Bank deems appropriate for the protection and maintenance of the Property including, without limitation, sums to pay Impositions and other levies, assessments or liens, maintain insurance, make repairs, secure the Property, maintain utility service, intervene in any condemnation and pay attorneys' fees and other fees and costs to enforce this Deed of Trust or protect the lien hereof (including foreclosure) or collect the Obligations, without limitation, including those incurred in any proceeding including Bankruptcy or arbitration.  Any amounts so paid shall bear interest at the default rate stated in the Note and shall be secured by this Deed of Trust.

**Indemnification.**  Grantor shall protect, indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages, penalties, fines, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Damages") imposed upon, incurred by or asserted or assessed against Bank on account of or in connection with (i) the Loan Documents or any failure or alleged failure of Grantor to comply with any of the terms of, or the

545724 (Rev 18.0)                                    Page 6

inaccuracy or breach of any representation in, the Loan Documents; (ii) the Collateral or any claim of loss or damage to the Property or any injury or claim of injury to, or death of, any person or property that may be occasioned by any cause whatsoever pertaining to the Property or the use, occupancy or operation thereof, (iii) any failure or alleged failure of Grantor to comply with any law, rule or regulation applicable to it or to the Property or the use, occupancy or operation of the Property (including, without limitation, the failure to pay any taxes, fees or other charges), provided that such indemnity shall be effective only to the extent of any Damages that may be sustained by Bank in excess of any net proceeds received by it from any insurance of Grantor (other than self-insurance) with respect to such Damages, (iv) any Damages whatsoever by reason of any alleged action, obligation or undertaking of Bank relating in any way to or any matter contemplated by the Loan Documents, (v) any claim for brokerage fees or such other commissions relating to the Property or any other Obligations, or (vi) any and all liability arising from any leases related to the Property.  Nothing contained herein shall require Grantor to indemnify Bank for any Damages resulting from Bank's gross negligence or its willful and wrongful acts.  The indemnity provided for herein shall survive payment of the Obligations and shall extend to the officers, directors, employees and duly authorized agents of Bank.  In the event the Bank incurs any Damages arising out of or in any way relating to the transaction contemplated by the Loan Documents (including any of the matters referred to in this section), the amounts of such Damages shall be added to the Obligations, shall bear interest, to the extent permitted by law, at the interest rate borne by the Obligations from the date incurred until paid and shall be payable on demand.

           **Due on Sale or Further Encumbrance or Transfer of an Interest in Grantor.**  Without the prior written consent of Bank in each instance, Grantor shall not (i) sell, convey, transfer or encumber the Property, or any part thereof or interest therein, whether legal or equitable, (ii) cause or permit any transfer of the Property or any part thereof, whether voluntarily, involuntarily or by operation of law, or (iii) enter into any agreement or transaction to transfer, or accomplish in form or substance a transfer, of the Property.  A "transfer" of the Property includes:  (a) the direct or indirect sale, transfer or conveyance of the Property or any portion thereof or interest therein; (b) the execution of an installment sale contract or similar instrument affecting all or any portion of the Property; (c) if Grantor or any general partner or member of Grantor, is a corporation, partnership, limited liability company, trust or other business entity, the transfer (whether in one transaction or a series of transactions) of any stock, partnership, limited liability company or other ownership interests in such corporation, partnership, limited liability company or entity including, without limitation, changes in stockholders, partners, members, managers, trustees, beneficiaries, or their respective interests; (d) if Grantor, or any general partner or member of Grantor, is a corporation, the creation or issuance of new stock by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders; and (e) an agreement by Grantor leasing all or a substantial part of the Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of or the grant of a security interest in and to any Leases.

           Bank's consent to any conveyance or encumbrance may be conditioned upon an increase in the interest rate specified in the Note (or other Obligations), an extension or curtailment of the maturity of the Obligations, or other modification of the Note or this instrument.

           **Remedies of Bank on Default.**  Failure of Grantor or any other person liable to timely pay or perform any of the Obligations is a default ("Default") under this Deed of Trust.  Upon the occurrence of Default the following remedies are available, without limitation, to Bank:  (i) Bank may exercise any or all of Bank's remedies under this Deed of Trust or other Loan Documents including, without limitation, acceleration of the maturity of all payments and Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) with Bank or any of its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements; (ii) Bank may take immediate possession of the Property or any part thereof (which Grantor agrees to surrender to Bank) and manage, control or lease the same to such persons and at such rental as it may deem proper and collect and apply Rents to the payment of:  (a) the Obligations, together with all costs and attorneys' fees; (b) all Impositions and any other levies, assessments or liens which may be prior in lien or payment to the Obligations, and premiums for insurance, with interest on all such items; and (c) the cost of all alterations, repairs, replacements and expenses incident to taking and retaining possession of the

Property and the management and operation thereof; all in such order or priority as Bank in its sole discretion may determine. The taking of possession shall not prevent concurrent or later proceedings for the foreclosure sale of the Property; (iii) Bank may apply to any court of competent jurisdiction for the appointment of a receiver for all purposes including, without limitation, to manage and operate the Property or any part thereof, and to apply the Rents therefrom as hereinabove provided. In the event of such application, Grantor consents to the appointment of a receiver, and agrees that a receiver may be appointed without notice to Grantor, without regard to whether Grantor has committed waste or permitted deterioration of the Property, without regard to the adequacy of any security for the Obligations, and without regard to the solvency of Grantor or any other person, firm or corporation who or which may be liable for the payment of the Obligations; (iv) Upon application of Bank, Trustee shall sell the Property and pay the proceeds of sale according to the following terms and conditions: (a) Trustee shall foreclose upon this Deed of Trust and sell the Property, or any part of the Property, at public sale conducted according to applicable law (referred to as "Trustee's Sale"); (b) Trustee shall provide such notice and shall advertise a Trustee's Sale in the manner required by applicable law; (c) Trustee shall conduct additional Trustee's Sales as may be required until all of the Property is sold or the Obligations are satisfied; (d) Trustee, may receive bids at Trustee's Sale from the Bank and may accept from Bank as successful bidder, credit against the Obligations as payment of any portion of the purchase price; (e) Trustee may receive a reasonable fee for Trustee's services hereunder, not to exceed the maximum fee allowed by applicable law; and (f) Trustee shall apply the proceeds of Trustee's Sale, first to any permitted Trustee's fee, second to expenses of foreclosure and sale, third to the Obligations, and any remaining proceeds as required by law; and (v) With respect to any portion of the Property governed by the UCC, Bank shall have all of the rights and remedies of a secured party thereunder. Bank may elect to foreclose upon any Property that is fixtures under law applicable to foreclosure of interests in real estate or law applicable to personal property.

**Substitute Trustee.** Bank may, at any time and from time to time, without notice, at the Bank's discretion, remove Trustee and appoint a substitute trustee ("Substitute Trustee") by filing in the records where this Deed of Trust is recorded an instrument affecting such removal and appointment. A Substitute Trustee shall be vested with title to the Property and with all rights, powers, and duties of the original Trustee herein and all provisions hereof pertaining to the Trustee shall similarly affect any Substitute Trustee. Any oath or bond by the Trustee is hereby waived.

**Miscellaneous Provisions.** Grantor agrees to the following: (i) All remedies available to Bank with respect to this Deed of Trust or available at law or in equity shall be cumulative and may be pursued concurrently or successively. No delay by Bank in exercising any remedy shall operate as a waiver of that remedy or of any Default. Any payment by Bank or acceptance by Bank of any partial payment shall not constitute a waiver by Bank of any Default; (ii) Grantor represents that Grantor (a) is (1) an adult individual and is sui juris, or (2) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (b) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (c) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Deed of Trust and any other Loan Document to which it is a party. (iii) The provisions hereof shall be binding upon and inure to the benefit of Grantor, its heirs, personal representatives, successors and assigns including, without limitation, subsequent owners of the Property or any part thereof, and shall be binding upon and inure to the benefit of Bank, its successors and assigns and any future holder of the Note or other Obligations; (iv) Any notices, demands or requests shall be sufficiently given Grantor if in writing and mailed or delivered to the address of Grantor shown above or to another address as provided herein and to Bank if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011, or such other address as Bank may specify from time to time and in the event that Grantor changes Grantor's address at any time prior to the date the Obligations are paid in full, that party shall promptly give written notice of such change of address by registered or certified mail, return receipt requested, all charges prepaid. Notices to Bank must include the mail code.

545724 (Rev 18.0)                                    Page 8

(v) This Deed of Trust may be terminated or modified only by an instrument in writing signed by the Bank and Grantor and may be modified without the Trustee joining or signing such instrument; (vi) All references to "Bank" shall mean to "Bank (for itself and its affiliate)"; (vii) The captions or headings at the beginning of each paragraph hereof are for the convenience of the parties and are not a part of this Deed of Trust; (viii) If the lien of this Deed of Trust is invalid or unenforceable as to any part of the Obligations, the unsecured portion of the Obligations shall be completely paid (and all payments made shall be deemed to have first been applied to payment of the unsecured portion of the Obligations) prior to payment of the secured portion of the Obligations and if any clause, provision or obligation hereunder is determined invalid or unenforceable the remainder of this Deed of Trust shall be construed and enforced as if such clause, provision or obligation had not been contained herein; (ix) This Deed of Trust shall be governed by and construed under the laws of the jurisdiction where this Deed of Trust is recorded; (x) Grantor by execution and Bank by acceptance of this Deed of Trust agree to be bound by the terms and provisions hereof). **FINAL AGREEMENT.** This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**IN WITNESS WHEREOF,** Grantor has signed and sealed this instrument as of the day and year first above written.

Grantor
Harborview Enterprises, LLC

By: _Patricia K Jernigan_ (SEAL)
Patricia K. Jernigan, Member/Manager

State of North Carolina
County of _Carteret_

### L. L. C. Acknowledgment

I _Marilyn L. Gould_, Notary Public, certify that **Patricia K. Jernigan** personally came before me this day and acknowledged that he/she is Member/Manager of Harborview Enterprises, LLC, a limited liability company, and that he/she, as Member/Manager being authorized to do so, executed the foregoing on behalf of the company.

Witness my hand and official seal, this the _24th_ day of _March_, 2006.

My commission expires:
_6-17-2009_

_Marilyn L. Gould_
Notary Public
Marilyn L. Gould

### Clerk's Certificate

The forgoing certificate of _____ is certified to be correct. This instrument and this certificate are duly registered at the date and time and in the book and page shown on the first page hereof.

_____ REGISTER OF DEEDS FOR _____ COUNTY

By _____
Deputy/Assistant-Register of Deeds

Tracking #. 71746 RKE
CAT - Deal # 633076  Facility ID 435232

545724 (Rev 18.0)                    Page 9

BOOK __1163__   PAGE __298__

EXHIBIT "A"

STATE OF NORTH CAROLINA   COUNTY OF CARTERET   TOWNSHIP OF MOREHEAD

TRACT ONE:  Beginning at a point which is the intersection of the
northern right-of-way of Shepard Street with the eastern right-of-
way of 9th Street; and running thence for a first call with the
eastern right-of-way margin of 9th Street N 5º 45' E 108.0 feet;
thence S 84º 15' E 100 feet; thence S 5 45 W 7.8 feet; thence S 84º
15' E 8.50 feet; thence S 5º 45' W 27.17 feet; thence N 84º 15' W
21.13 feet; thence S 6º 7' W 72.03 feet; thence N 84º 15' W 36.90
feet; thence S 5º 45' W 1.0 feet to a point in the northern right-
of-way margin of Shepard Street; and thence with said right-of-way
margin N 84º 15' W 50.0 feet to the point of beginning.

TRACT TWO:  Beginning at a point in the West right-of-way margin of
9th Street, said point being S 5º 45' W 100.0 feet from the
intersection of said margin with the South right-of-way margin of
Evans Street; and running thence N 84º 15' W 50 feet to the
southeast corner of Lot 14, Block 71, as shown on the official map
of Morehead City recorded in Map Book 1, page 139, Carteret County
Registry; thence N 5º 45' E 80.0 feet; thence S 84º 15' E 50.0 feet
to a point in the West right-of-way margin of 9th Street; and
thence with said margin S 5º 45' W 80.0 feet to the point of
beginning.

BOOK  1163      PAGE  298

```
                                      Melanie Arthur                11P
                                         CARTERET COUNTY
                                      JL Date 03/24/2006    Time 11:10:00
                                      GR 1163299            Page 1 of 11
```

NORTH CAROLINA, CARTERET COUNTY
This instrument and this certificate are duly filed at the
date and time and in the Book and Page shown on the
first page hereof.

Melanie Arthur, Register of Deeds

By _____
Asst./Deputy, Register of Deeds

Return to Taylor & Taylor

## DEED OF TRUST

**FOR BANK USE ONLY:**
SATISFACTION: The Obligations secured by the within Deed of Trust has been satisfied in full, this the
_____ day of _____, _____.

Signed: _____

_____

_____

_____

PREPARED BY:  Jennifer O'Farrell
RETURN TO:  Collateral Maintenance NC 6038
Wachovia Bank, National Association
P.O. Box 2705
Winston Salem, NC 27101-2705

   This DEED OF TRUST (hereafter referred to as "Deed of Trust") made March 24, 2006 by and
among HARBORVIEW ENTERPRISES, LLC, whose address is 812 Shepard Street, Morehead City,
North Carolina  28557 ("Grantor"), TRSTE, Inc., a Virginia corporation qualified to do business in North
Carolina, whose address is 301 South Tryon Street, Charlotte, North Carolina  28202 ("Trustee"), and the
owner and holder of a promissory note, WACHOVIA BANK, NATIONAL ASSOCIATION, a national
banking association, whose address is Charlotte, North Carolina 28202 ("Bank").

### W I T N E S S E T H :

   To secure payment and performance of obligations under a Promissory Note (the "Note") of even
date herewith, in the amount of $150,000.00, made by Grantor payable to Bank, this Deed of Trust, any
present or future Letters of Credit issued by Bank for the account of Grantor, other loan documents as
defined in the Note (the "Loan Documents"), and swap agreements (as defined in 11 U.S.C. § 101, as in
effect from time to time) between Bank or any of its affiliates and Grantor, all other indebtedness of
Grantor to Bank whenever borrowed or incurred, whether or not reasonably contemplated by the parties
hereto as of the date hereof, and any renewals, extensions, novations, or modifications of the foregoing
(collectively the "Obligations"), and in consideration of these premises and for other consideration,
Grantor does grant and convey unto Trustee, as trustee for Bank and Bank's affiliates, in fee simple, all of

545724 (Rev 18.0)     PCI474823XXXX001      CDDOTMXXXX          rrf_main.doc
DDTM

**EXHIBIT E**

BOOK ___1163___    PAGE ___299___

Grantor's right, title and interest now owned or hereafter acquired in and to each of the following (collectively, the "Property"): (i) all those certain tracts of land in the County of Carteret, State of North Carolina described in EXHIBIT A attached hereto and made part hereof (the "Land"); (ii) all buildings and improvements now or hereafter erected on the Land; (iii) all fixtures attached to the Land or any buildings or improvements situated thereon; and (iv) all estates, rights, tenements, hereditaments, privileges, rents, issues, profits easements, and appurtenances of any kind benefiting the Land; all means of access to and from the Land, whether public or private; and all water and mineral rights.

In the event that Grantor is the owner of a leasehold estate with respect to any portion of the Property and Grantor obtains a fee estate in such portions of the Property, then, such fee estate shall automatically, and without further action of any kind on the part of the Grantor, be and become subject to the security title and lien of this Agreement.

TO HAVE AND TO HOLD the Property and all the estate, right, title and interest, in law and in equity, of Grantor's in and to the Property unto Trustee, its successors and assigns, in fee simple, forever.

IN TRUST, HOWEVER, that if all Obligations are timely paid and performed and each and every representation, warranty, agreement, and condition of this Deed of Trust, the other Loan Documents, and any swap agreements are complied with and abided by, this Deed of Trust and the estate hereby created shall cease and be null, void, and canceled of record at the request and expense of Grantor, and if Default occurs, Trustee is authorized to foreclose and sell the Property under power of sale or by judicial proceeding according to applicable law and as provided herein.

Grantor WARRANTS AND REPRESENTS that Grantor is lawfully seized of the Property, in fee simple, absolute, that Grantor has the legal right to convey and encumber the same, and that the Property is free and clear of all liens and encumbrances except as set forth in EXHIBIT B. Grantor further warrants and will forever defend all and singular the Property and title thereto to Trustee, Bank and Bank's successors and assigns, against the lawful claims of all persons whomsoever.

To protect the security of this Deed of Trust, Grantor further represents and agrees with Trustee and Bank as follows:

**Payment of Obligations.** That the Obligations shall be timely paid and performed.

**Future Advances.** This Deed of Trust is given to secure not only existing Obligations, but also future advances, including obligations under swap agreements made, and future swap agreements (as defined in 11 U.S.C. § 101, in effect from time to time) entered into with Bank or any of its affiliates, within 15 years of the date of this Deed of Trust to the same extent as if such future advances and swap agreements are made on the date of the execution of this Deed of Trust. The principal amount that may be so secured may decrease or increase from time to time, but the total amount so secured at any one time shall not exceed $300,000.00, plus all interest, costs, reimbursements, fees and expenses due under this Deed of Trust and secured hereby. Grantor shall not execute any document that impairs or otherwise impacts the priority of any existing or future Obligations secured by this Deed of Trust. The amount of present Obligations secured hereby is $150,000.00.

**Grant of Security Interest in Personal Property.** This Deed of Trust constitutes a security agreement under the UCC and shall be deemed to constitute a fixture financing statement. Grantor hereby grants a security interest in any personal property included in the Property. On request of Bank, Grantor will execute one or more Financing Statements in form satisfactory to Bank and will pay all costs and expenses of filing the same in all public filing offices, where filing is deemed desirable by Bank. Bank is authorized to file Financing Statements relating to the Property without Grantor's signature where permitted by law. Grantor appoints Bank as its attorney-in-fact to execute such documents necessary to perfect Bank's security interest on Grantor's behalf. The appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain outstanding.

Nothing herein obligates Bank to provide credit in excess of the Obligations.

BOOK __1163__    PAGE __299__

**Leases, Subleases and Easements.**  Grantor shall maintain, enforce and cause to be performed all of the terms and conditions under any lease, sublease or easement which may constitute a portion of the Property.  Grantor shall not, without the consent of Bank (which consent shall not be unreasonably withhold or delayed), enter into any new lease of all or any portion of the Property, agree to the cancellation or surrender under any lease of all or any portion of the Property, agree to prepayment of rents, issues or profits (other than rent paid at the signing of a lease or sublease), modify any such lease so as to shorten the term, decrease the rent, accelerate the payment of rent, or change the terms of any renewal option; and any such purported new lease, cancellation, surrender, prepayment or modification made without the consent of Bank shall be void as against Bank.

**Required Insurance.**  Grantor shall maintain with respect to the Property:  (i) during construction of any improvements on the Property, "all-risk" builders risk insurance which must include windstorm, hail damage, fire and vandalism (non-reporting Completed Value with Special Cause of Loss form), in an amount not less than the completed replacement value of the improvements under construction, naming Bank as mortgagee and loss payee; (ii) upon completion of construction, upon occupancy of any improvements, and at all other times, insurance against loss or damage by fire and other casualties and hazards by insurance written on an "all risks" basis, including malicious mischief coverage, in an amount not less than the replacement cost thereof, including coverage for loss of rents or business interruption if applicable, naming Bank as loss payee and mortgagee; (iii) if the Property is required to be insured pursuant to the National Flood Reform Act of 1994, and the regulations promulgated thereunder, flood insurance is required in the amount equal to the lesser of the loan amount or maximum available under the National Flood Insurance Program, but in no event should the amount of coverage be less than the value of the improved structure, naming Bank as mortgagee and loss payee. If, after closing, the Property (or any part thereof) is remapped and if the vertical improvements are determined to be located in a special flood hazard area, Grantor must obtain and maintain a flood insurance policy.  If, within forty-five (45) days of receipt of notification from Bank that the Property has been reclassified by FEMA as being located in a special flood hazard area, Grantor has not provided sufficient evidence of flood insurance, Bank is mandated under federal law to purchase flood insurance on behalf of Grantor, and Bank will add the associated costs to the principal balance of the Note.  If the land or any portion thereof is located in a special flood hazard area, this Agreement may be terminated by Bank at its sole option; (iv) as applicable, insurance which complies with the workers' compensation and employers' liability laws of all states in which Grantor shall be required to maintain such insurance; and (v) liability insurance providing coverage in such amount as Bank may require but in no event less than $1,000,000.00 combined single limit, naming Bank as an additional insured; and (vi) such other insurance as Bank may require from time to time.

All property insurance policies shall contain an endorsement or agreement by the insurer in form satisfactory to Bank that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Grantor and the further agreement (within both the property and liability policies) of the insurer waiving rights of subrogation against Bank, and rights of set-off, counterclaim or deductions against Grantor.

All insurance policies shall be in form, provide coverages, be issued by companies and be in amounts satisfactory to Bank.  At least 30 days prior to the expiration of each such policy, Grantor shall furnish Bank with evidence satisfactory to Bank that such policy has been renewed or replaced or is no longer required hereunder.  All such policies shall provide that the policy will not be canceled or materially amended without at least 30 days prior written notice to Bank.  In the event Grantor fails to provide, maintain, keep in force, and furnish to Bank the policies of insurance required by this paragraph, Bank may procure such insurance or single-interest insurance in such amounts, at such premium, for such risks and by such means as Bank chooses, at Grantor's expense; provided however, Bank shall have no responsibility to obtain any insurance, but if Bank does obtain insurance, Bank shall have no responsibility to assure that the insurance obtained shall be adequate or provide any protection to Grantor.

BOOK __1163__    PAGE __299__

**Insurance Proceeds.** After occurrence of any loss to any of the Property, Grantor shall give prompt written notice thereof to Bank.

In the event of such loss all insurance proceeds, including unearned premiums, shall be payable to Bank, and Grantor hereby authorizes and directs any affected insurance company to make payment of such proceeds directly to Bank and not to Bank and Grantor jointly. Bank is hereby authorized by Grantor to make proof of loss if not promptly made by Grantor, settle, adjust or compromise any claims for loss or damage under any policy or policies of insurance and Grantor appoints Bank as its attorney-in-fact to receive and endorse any insurance proceeds to Bank, which appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain unsatisfied. Grantor shall pay the costs of collection, including attorneys' fees, of insurance proceeds payable on account of such damage or destruction. Grantor shall have no claim against the insurance proceeds, or be entitled to any portion thereof, and all rights to the insurance proceeds are hereby assigned to Bank as security for payment of the Obligations.

In the event of any damage to or destruction of the Property, Bank shall have the option of applying or paying all or part of the insurance proceeds to (i) the Obligations in such order as Bank may determine, (ii) restoration, replacement or repair of the Property in accordance with Bank's standard construction loan disbursement conditions and requirements, or (iii) Grantor. Nothing herein shall be deemed to excuse Grantor from restoring, repairing and maintaining the Property as required herein.

**Minimum Standards.** In addition to the requirements set forth in the Loan Documents, all surveys, insurance, title policies, construction documents, environmental reports, payment and performance bonds, and any other due diligence or additional documents required in connection with this Loan, shall comply with Bank's minimum standards in place from time to time for such documents, which shall be provided in writing by Bank to Borrower upon request.

**Impositions; Escrow Deposit.** Grantor will pay all taxes, levies, assessments and other fees and charges imposed upon or which may become a lien upon the Property under any law or ordinance (all of the foregoing collectively "Impositions") before they become delinquent and in any event in the same calendar year in which they first become due. Upon request of Bank, Grantor shall add to each periodic payment required under the Note the amount estimated by Bank to be sufficient to enable Bank to pay, as they come due, all Impositions and insurance premiums which Grantor is required to pay hereunder. Payments requested under this provision shall be supplemented or adjusted as required by Bank from time to time. Such funds may be commingled with the general funds of Bank and shall not earn interest. Upon the occurrence of a Default, Bank may apply such funds to pay any of the Obligations.

**Use of Property.** Grantor shall use and operate, and require its lessees or licensees to use and operate, the Property in compliance with all applicable laws (including, for example, the Americans with Disabilities Act and the Fair Housing Act) and ordinances, covenants, and restrictions, and with all applicable requirements of any lease or sublease now or hereafter affecting the Property. Grantor shall not permit any unlawful use of the Property or any use that may give rise to a claim of forfeiture of any of the Property. Grantor shall not allow changes in the stated use of Property from that disclosed to Bank at the time of execution hereof. Grantor shall not initiate or acquiesce to a zoning change of the Property without prior notice to, and written consent of, Bank.

**Maintenance, Repairs and Alterations.** Grantor shall keep and maintain the Property in good condition and repair and fully protected from the elements to the satisfaction of Bank. Grantor will not remove, demolish or structurally alter any of the buildings or other improvements on the Property (except such alterations as may be required by laws, ordinances or regulations) without the prior written consent of Bank. Grantor shall promptly notify Bank in writing of any material loss, damage or adverse condition affecting the Property.

**Eminent Domain.** Should the Property or any interest therein be taken or damaged by reason of any public use or improvement or condemnation proceeding ("Condemnation"), or should Grantor receive

BOOK ___1163___    PAGE ___299_____

any notice or other information regarding such Condemnation, Grantor shall give prompt written notice thereof to Bank. Bank shall be entitled to all compensation, awards and other payments or relief granted in connection with such Condemnation and, at its option, may commence, appear in and prosecute in its own name any action or proceedings relating thereto. Bank shall be entitled to make any compromise or settlement in connection with such taking or damage. All compensation, awards, and damages awarded to Grantor related to any Condemnation (the "Proceeds") are hereby assigned to Bank and Grantor agrees to execute such further assignments of the Proceeds as Bank may require. Bank shall have the option of applying or paying the Proceeds in the same manner as insurance proceeds as provided herein. Grantor appoints Bank as its attorney-in-fact to receive and endorse the Proceeds to Bank, which appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain unsatisfied.

**Environmental Condition of Property and Indemnity.** Grantor warrants and represents to Bank, except as reported by Grantor to Bank in writing, that: (i) Grantor has inspected and is familiar with the environmental condition of the Property; (ii) the Property and Grantor, and any occupants of the Property, are in compliance with and shall continue to be in compliance with all applicable federal, state and local laws and regulations intended to protect the environment and public health and safety as the same may be amended from time to time ("Environmental Laws"); (iii) the Property is not and has never been used to generate, handle, treat, store or dispose of, in any quantity, oil, petroleum products, hazardous or toxic substances, hazardous waste, regulated substances or hazardous air pollutants ("Hazardous Materials") in violation of any Environmental Laws; (iv) no Hazardous Materials (including asbestos, mold or lead paint in any form) are located on or under the Property or emanate from the Property; (v) there are no unregistered underground storage tanks on the Property that are subject to any underground storage tank registration laws or regulations; (vi) no notice has been received with regard to any Hazardous Material on the Property; (vii) no action, investigation or proceeding is pending or to Grantor's knowledge threatened which seeks to enforce any right or remedy against Grantor or the Property under any Environmental Law; and (viii) all licenses, permits and other governmental and regulatory actions necessary for the Property to comply with Environmental Laws shall be obtained and maintained and Grantor shall assure compliance therewith.

Further, Grantor represents to Bank that no portion of the Property is a protected wetland. Grantor agrees to notify Bank immediately upon receipt of any citations, warnings, orders, notices, consent agreements, process or claims alleging or relating to violations of any Environmental Laws or to the environmental condition of the Property and shall conduct and complete all investigations and all cleanup actions necessary to comply with the Environmental Laws and to remove, in accordance with Environmental Laws, any Hazardous Material from the Property.

Grantor shall indemnify, hold harmless, and defend Bank and Trustee from and against any and all damages, penalties, fines, claims, suits, liabilities, costs, judgments and expenses, including attorneys', consultants' or experts' fees of every kind and nature incurred, suffered by or asserted against Bank or Trustee as a direct or indirect result of: (i) representations made by Grantor in this Section being or becoming untrue in any material respect; (ii) Grantor's violation of or failure to meet the requirements of any Environmental Laws; or (iii) Hazardous Materials which, while the Property is subject to this Deed of Trust, exist on the Property. Bank shall have the right to arrange for or conduct environmental inspections of the Property from time to time (including the taking of soil, water, air or material samples). The cost of such inspections made after Default or which are required by laws or regulations applicable to Bank shall be borne by Grantor. However, Grantor's indemnity shall not apply to any negligent or intentional act of Bank which takes place after foreclosure or satisfaction of this Deed of Trust. These indemnification obligations are in addition to General Indemnification provisions set forth hereafter. Grantor's Obligations under this section shall continue, survive and remain in full force and effect notwithstanding the repayment of the Obligations, a foreclosure of or exercise of power of sale under this instrument, a delivery of a deed in lieu of foreclosure, a cancellation or termination of record of this instrument and the transfer of the Property.

**Appraisals.** Grantor agrees that Bank may obtain an appraisal of the Property when required by the regulations of the Federal Reserve Board or the Office of the Comptroller of the Currency, or any

BOOK 1163 PAGE 299

other regulatory agency or at such other times as Bank may reasonably require. Such appraisals shall be performed by an independent third party appraiser selected by Bank. The cost of such appraisals shall be borne by Grantor. If requested by Bank, Grantor shall execute an engagement letter addressed to the appraiser selected by Bank. Grantor's failure or refusal to sign such an engagement letter, however, shall not impair Bank's right to obtain such an appraisal. Grantor agrees to pay the cost of such appraisal within 10 days after receiving an invoice for such appraisal.

**Inspections.** Bank, or its representatives or agents, are authorized to enter at any reasonable time upon any part of the Property for the purpose of inspecting the Property and for the purpose of performing any of the acts it is authorized to perform under the terms of this Deed of Trust.

**Liens and Subrogation.** Grantor shall pay and promptly discharge all liens, claims and encumbrances upon the Property except for those described in EXHIBIT B. Grantor shall have the right to contest in good faith the validity of any such lien, claim or encumbrance, provided: (i) such contest suspends the collection thereof or there is no danger of the Property being sold or forfeited while such contest is pending; (ii) Grantor first deposits with Bank a bond or other security satisfactory to Bank in such amounts as Bank shall reasonably require; and (iii) Grantor thereafter diligently proceeds to cause such lien, claim or encumbrance to be removed and discharged.

Bank shall be subrogated to any liens, claims and encumbrances against Grantor or the Property that are paid or discharged through payment by Bank or with loan proceeds, notwithstanding the record cancellation or satisfaction thereof.

**Waiver of Grantor's Rights.** To the fullest extent permitted by law, Grantor waives the benefit of all laws now existing or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the Property, (ii) in any way extending the time for the enforcement of the collection of the Note or the debt evidenced thereby or any of the other Obligations, and any rights to hearing prior to the exercise by Bank of any right, power, or remedy herein provided to Bank.

To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or seek to take the benefit or advantage of any law now or hereafter in force providing for any exemption (including homestead exemption), appraisement, valuation, stay, extension or redemption, and Grantor for themselves and their respective heirs, devisees, representatives, successors and assigns, and for any and all persons claiming any interest in the Property, to the extent permitted by law, hereby waive and release all rights of valuation, appraisement, redemption, stay of execution, the benefit of all exemption laws, notice of election to mature or declare due the whole of the secured indebtedness and marshalling in the event of foreclosure of the liens hereby created. Grantor further waives any and all notices including, without limitation, notice of intention to accelerate and of acceleration of the Obligations.

**Payments by Bank.** In the event of default in the timely payment or performance of any of the Obligations, Bank, at its option and without any duty on its part to determine the validity or necessity thereof, may pay the sums for which Grantor is obligated. Further, Bank may pay such sums as Bank deems appropriate for the protection and maintenance of the Property including, without limitation, sums to pay Impositions and other levies, assessments or liens, maintain insurance, make repairs, secure the Property, maintain utility service, intervene in any condemnation and pay attorneys' fees and other fees and costs to enforce this Deed of Trust or protect the lien hereof (including foreclosure) or collect the Obligations, without limitation, including those incurred in any proceeding including Bankruptcy or arbitration. Any amounts so paid shall bear interest at the default rate stated in the Note and shall be secured by this Deed of Trust.

**Indemnification.** Grantor shall protect, indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages, penalties, fines, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Damages") imposed upon, incurred by or asserted or assessed against Bank on account of or in connection with (i) the Loan Documents or any failure or alleged failure of Grantor to comply with any of the terms of, or the

inaccuracy or breach of any representation in, the Loan Documents; (ii) the Collateral or any claim of loss or damage to the Property or any injury or claim of injury to, or death of, any person or property that may be occasioned by any cause whatsoever pertaining to the Property or the use, occupancy or operation thereof, (iii) any failure or alleged failure of Grantor to comply with any law, rule or regulation applicable to it or to the Property or the use, occupancy or operation of the Property (including, without limitation, the failure to pay any taxes, fees or other charges), provided that such indemnity shall be effective only to the extent of any Damages that may be sustained by Bank in excess of any net proceeds received by it from any insurance of Grantor (other than self-insurance) with respect to such Damages, (iv) any Damages whatsoever by reason of any alleged action, obligation or undertaking of Bank relating in any way to or any matter contemplated by the Loan Documents, (v) any claim for brokerage fees or such other commissions relating to the Property or any other Obligations, or (vi) any and all liability arising from any leases related to the Property. Nothing contained herein shall require Grantor to indemnify Bank for any Damages resulting from Bank's gross negligence or its willful and wrongful acts. The indemnity provided for herein shall survive payment of the Obligations and shall extend to the officers, directors, employees and duly authorized agents of Bank. In the event the Bank incurs any Damages arising out of or in any way relating to the transaction contemplated by the Loan Documents (including any of the matters referred to in this section), the amounts of such Damages shall be added to the Obligations, shall bear interest, to the extent permitted by law, at the interest rate borne by the Obligations from the date incurred until paid and shall be payable on demand.

**Due on Sale or Further Encumbrance or Transfer of an Interest in Grantor.** Without the prior written consent of Bank in each instance, Grantor shall not (i) sell, convey, transfer or encumber the Property, or any part thereof or interest therein, whether legal or equitable, (ii) cause or permit any transfer of the Property or any part thereof, whether voluntarily, involuntarily or by operation of law, or (iii) enter into any agreement or transaction to transfer, or accomplish in form or substance a transfer, of the Property. A "transfer" of the Property includes: (a) the direct or indirect sale, transfer or conveyance of the Property or any portion thereof or interest therein; (b) the execution of an installment sale contract or similar instrument affecting all or any portion of the Property; (c) if Grantor or any general partner or member of Grantor, is a corporation, partnership, limited liability company, trust or other business entity, the transfer (whether in one transaction or a series of transactions) of any stock, partnership, limited liability company or other ownership interests in such corporation, partnership, limited liability company or entity including, without limitation, changes in stockholders, partners, members, managers, trustees, beneficiaries, or their respective interests; (d) if Grantor, or any general partner or member of Grantor, is a corporation, the creation or issuance of new stock by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders; and (e) an agreement by Grantor leasing all or a substantial part of the Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of or the grant of a security interest in and to any Leases.

Bank's consent to any conveyance or encumbrance may be conditioned upon an increase in the interest rate specified in the Note (or other Obligations), an extension or curtailment of the maturity of the Obligations, or other modification of the Note or this instrument.

**Remedies of Bank on Default.** Failure of Grantor or any other person liable to timely pay or perform any of the Obligations is a default ("Default") under this Deed of Trust. Upon the occurrence of Default the following remedies are available, without limitation, to Bank: (i) Bank may exercise any or all of Bank's remedies under this Deed of Trust or other Loan Documents including, without limitation, acceleration of the maturity of all payments and Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) with Bank or any of its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements; (ii) Bank may take immediate possession of the Property or any part thereof (which Grantor agrees to surrender to Bank) and manage, control or lease the same to such persons and at such rental as it may deem proper and collect and apply Rents to the payment of: (a) the Obligations, together with all costs and attorneys' fees; (b) all Impositions and any other levies, assessments or liens which may be prior in lien or payment to the Obligations, and premiums for insurance, with interest on all such items; and (c) the cost of all alterations, repairs, replacements and expenses incident to taking and retaining possession of the

Property and the management and operation thereof, all in such order or priority as Bank in its sole discretion may determine. The taking of possession shall not prevent concurrent or later proceedings for the foreclosure sale of the Property; (iii) Bank may apply to any court of competent jurisdiction for the appointment of a receiver for all purposes including, without limitation, to manage and operate the Property or any part thereof, and to apply the Rents therefrom as hereinabove provided. In the event of such application, Grantor consents to the appointment of a receiver, and agrees that a receiver may be appointed without notice to Grantor, without regard to whether Grantor has committed waste or permitted deterioration of the Property, without regard to the adequacy of any security for the Obligations, and without regard to the solvency of Grantor or any other person, firm or corporation who or which may be liable for the payment of the Obligations; (iv) Upon application of Bank, Trustee shall sell the Property and pay the proceeds of sale according to the following terms and conditions: (a) Trustee shall foreclose upon this Deed of Trust and sell the Property, or any part of the Property, at public sale conducted according to applicable law (referred to as "Trustee's Sale"); (b) Trustee shall provide such notice and shall advertise a Trustee's Sale in the manner required by applicable law; (c) Trustee shall conduct additional Trustee's Sales as may be required until all of the Property is sold or the Obligations are satisfied; (d) Trustee, may receive bids at Trustee's Sale from the Bank and may accept from Bank as successful bidder, credit against the Obligations as payment of any portion of the purchase price; (e) Trustee may receive a reasonable fee for Trustee's services hereunder, not to exceed the maximum fee allowed by applicable law; and (f) Trustee shall apply the proceeds of Trustee's Sale, first to any permitted Trustee's fee, second to expenses of foreclosure and sale, third to the Obligations, and any remaining proceeds as required by law; and (v) With respect to any portion of the Property governed by the UCC, Bank shall have all of the rights and remedies of a secured party thereunder. Bank may elect to foreclose upon any Property that is fixtures under law applicable to foreclosure of interests in real estate or law applicable to personal property.

**Substitute Trustee.**  Bank may, at any time and from time to time, without notice, at the Bank's discretion, remove Trustee and appoint a substitute trustee ("Substitute Trustee") by filing in the records where this Deed of Trust is recorded an instrument affecting such removal and appointment. A Substitute Trustee shall be vested with title to the Property and with all rights, powers, and duties of the original Trustee herein and all provisions hereof pertaining to the Trustee shall similarly affect any Substitute Trustee. Any oath or bond by the Trustee is hereby waived.

**Miscellaneous Provisions.**  Grantor agrees to the following:  (i) All remedies available to Bank with respect to this Deed of Trust or available at law or in equity shall be cumulative and may be pursued concurrently or successively. No delay by Bank in exercising any remedy shall operate as a waiver of that remedy or of any Default. Any payment by Bank or acceptance by Bank of any partial payment shall not constitute a waiver by Bank of any Default; (ii) Grantor represents that Grantor (a) is (1) an adult individual and is sui juris, or (2) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (b) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (c) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Deed of Trust and any other Loan Document to which it is a party. (iii) The provisions hereof shall be binding upon and inure to the benefit of Grantor, its heirs, personal representatives, successors and assigns including, without limitation, subsequent owners of the Property or any part thereof, and shall be binding upon and inure to the benefit of Bank, its successors and assigns and any future holder of the Note or other Obligations; (iv) Any notices, demands or requests shall be sufficiently given Grantor if in writing and mailed or delivered to the address of Grantor shown above or to another address as provided herein and to Bank if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA  24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA  24011, or such other address as Bank may specify from time to time and in the event that Grantor changes Grantor's address at any time prior to the date the Obligations are paid in full, that party shall promptly give written notice of such change of address by registered or certified mail, return receipt requested, all charges prepaid. Notices to Bank must include the mail code.

BOOK  1163        PAGE  299

(v) This Deed of Trust may be terminated or modified only by an instrument in writing signed by the Bank and Grantor and may be modified without the Trustee joining or signing such instrument; (vi) All references to "Bank" shall mean to "Bank (for itself and its affiliate)"; (vii) The captions or headings at the beginning of each paragraph hereof are for the convenience of the parties and are not a part of this Deed of Trust; (viii) If the lien of this Deed of Trust is invalid or unenforceable as to any part of the Obligations, the unsecured portion of the Obligations shall be completely paid (and all payments made shall be deemed to have first been applied to payment of the unsecured portion of the Obligations) prior to payment of the secured portion of the Obligations and if any clause, provision or obligation hereunder is determined invalid or unenforceable the remainder of this Deed of Trust shall be construed and enforced as if such clause, provision or obligation had not been contained herein; (ix) This Deed of Trust shall be governed by and construed under the laws of the jurisdiction where this Deed of Trust is recorded; (x) Grantor by execution and Bank by acceptance of this Deed of Trust agree to be bound by the terms and provisions hereof). **FINAL AGREEMENT.** This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

    **IN WITNESS WHEREOF,** Grantor has signed and sealed this instrument as of the day and year first above written.

Grantor
Harborview Enterprises, LLC

By: _Patricia K. Jernigan_ (SEAL)
Patricia K. Jernigan, Member/Manager

State of North Carolina
County of _Carteret_

### L. L. C. Acknowledgment

    I _Marilyn L. Gould_ , Notary Public, certify that **Patricia K. Jernigan** personally came before me this day and acknowledged that he/she is Member/Manager of Harborview Enterprises, LLC, a limited liability company, and that he/she, as Member/Manager being authorized to do so, executed the foregoing on behalf of the company.

Witness my hand and official seal, this the _24th_ day of _March_ , 2006.

My commission expires: _Marilyn L. Gould_
_6-17-2009_ Notary Public

Marilyn L. Gould

### Clerk's Certificate

    The forgoing certificate of _____ is certified to be correct. This instrument and this certificate are duly registered at the date and time and in the book and page shown on the first page hereof.

_____ REGISTER OF DEEDS FOR _____ COUNTY

By _____
Deputy/Assistant-Register of Deeds

Tracking #: 71768 RKE
CAT - Deal # 676806  Facility ID 474823

545724 (Rev 18.0)                        Page 9                        ml_main.doc

BOOK _1163_ PAGE _299_

EXHIBIT "A"

STATE OF NORTH CAROLINA   COUNTY OF CARTERET   TOWNSHIP OF MOREHEAD

TRACT ONE:  Beginning at a point which is the intersection of the northern right-of-way of Shepard Street with the eastern right-of-way of 9th Street; and running thence for a first call with the eastern right-of-way margin of 9th Street N 5º 45' E 108.0 feet; thence S 84º 15' E 100 feet; thence S 5 45 W 7.8 feet; thence S 84º 15' E 8.50 feet; thence S 5º 45' W 27.17 feet; thence N 84º 15' W 21.13 feet; thence S 6º 7' W 72.03 feet; thence N 84º 15' W 36.90 feet; thence S 5º 45' W 1.0 feet to a point in the northern right-of-way margin of Shepard Street; and thence with said right-of-way margin N 84º 15' W 50.0 feet to the point of beginning.

TRACT TWO:  Beginning at a point in the West right-of-way margin of 9th Street, said point being S 5º 45' W 100.0 feet from the intersection of said margin with the South right-of-way margin of Evans Street; and running thence N 84º 15' W 50 feet to the southeast corner of Lot 14, Block 71, as shown on the official map of Morehead City recorded in Map Book 1, page 139, Carteret County Registry; thence N 5º 45' E 80.0 feet; thence S 84º 15' E 50.0 feet to a point in the West right-of-way margin of 9th Street; and thence with said margin S 5º 45' W 80.0 feet to the point of beginning.

BOOK 1163   PAGE 299

**EXHIBIT B**

Deed of Trust from Harborview Enterprises, LLC to Wachovia Bank, National Association, dated March 23, 2006, in the original principal amount of $1,000,000.00, as recorded in Book __1163__, Page __299__ in the Register of Deeds of Carteret County, North Carolina.

545724 (Rev 18.0)

ml_main.doc

BOOK __1163__ PAGE __299__

NORTH CAROLINA, CARTERET COUNTY
This instrument and this certificate are duly filed at
the date and time and in the Book and Page shown
on the first page hereof.

Joy Lawrence, Register of Deeds

By _____
   Asst. Deputy, Register of Deed

FILE # 1332042

FOR REGISTRATION REGISTER OF DEEDS
Joy Lawrence
Carteret County, NC
January 21, 2010 01:55:52 PM
COUNTER DEED     4 P
FEE: $20.00
FILE # 1332042

Prepared by and Return to:
Taylor & Taylor, PA

STATE OF NORTH CAROLINA
COUNTY OF CARTERET

WARRANTY DEED
Parcel #13013E0508
and #13013E0407
Excise Tax $00.00

THIS DEED, made this the 12th day of January, 2010, by Harborview Enterprises, 812 Shepard Street, Morehead City, North Carolina 28557, a North Carolina General Partnership with its principal office and place of business in Carteret County, North Carolina, hereinafter called "GRANTOR," to Harborview Enterprises, LLC, a North Carolina Limited Liability Company, whose address is 812 Shepard Street, Morehead City, North Carolina 28557, hereinafter called "GRANTEE;"

WITNESSETH THAT:

GRANTOR, for TEN DOLLARS ($10.00) and other valuable consideration, hereby acknowledged as paid and received, has bargained and sold, and by these presents does grant, bargain, sell and convey (subject to limitations, conditions, and provisions - if any - listed below) to GRANTEE, their heirs and assigns, certain land described as follows:

NORTH CAROLINA        CARTERET COUNTY        MOREHEAD TOWNSHIP

BOOK 1332 PAGE 42



**EXHIBIT F**

TRACT ONE: Beginning at a point which is the intersection of the northern right of way of Shepard Street with the eastern right of way of 9th Street; and running thence for a first call with the eastern right-of-way margin of 9th Street N 5-45 E 108.0 feet; thence S 84-15 E 100 feet; thence S 5-45 W 7.8 feet; thence S 84-15 E 8.50 feet; thence S 5-45 W 27.17 feet; thence N 84-15 W 21.13 feet; thence S 6-7 W 72.03 feet; thence N 84-15 W 36.90 feet; thence S 5-45 W 1.0 feet to a point in the northern right-of-way margin on Shepard Street; and thence with said right-of-way margin N 84-15 W 50 feet to the point of beginning.

TRACT TWO: Being the southern eighty (80) feet of Lot 15, Block 71, in accordance with the official map of the Town of Morehead City as recorded in Map Book 1, Page 139, Office of the Register of Deeds of Carteret County, and being more particularly described as beginning at a point in the western right-of-way margin of 9th Street which is S 5-45 W 20 feet from the northeast corner of said Lot 15; and running thence for a first call with the western right-of-way margin of 9th Street S 5-45 W 80 feet; thence with the southern line of Lot 73 N 84-15 W 100 feet; thence N 5-45 E 80 feet; and thence S 84-15 E 100 feet to the point of beginning.

This conveyance subject to all easements and restrictions of record and 2010 ad valorem taxes. For title reference see deed recorded in Book 710, Page 129, Carteret County Registry.

All or a portion of the property herein conveyed does not include the primary residence of a Grantor.

TO HAVE AND TO HOLD (subject to limitations, conditions restrictions and provisions – if any – listed above), said land, and all privileges and appurtenances thereto belonging, to GRANTEE, their heirs, successors and assigns, forever.

And GRANTOR covenants with GRANTEE that they are seized of said premises in fee and has the right to convey in fee simple; that the same are free and clear of all encumbrances (except

BOOK 1332 PAGE 42

-3-

those - if any - listed above), and that they do hereby forever

warrant and will forever defend the same against the lawful

claims of all whomsoever.

Wherever used herein, the singular shall include the

plural, the plural the singular, and the use of any gender shall

be applicable to all genders as the context may require.

IN TESTIMONY WHEREOF, GRANTOR has signed and sealed this

Deed.

_____ (SEAL)
John R. Jernigan

_____ (SEAL)
Laura A. Jernigan

_____ (SEAL)
James D. Jernigan

_____ (SEAL)
Kaye R. Jernigan

_____ (SEAL)
Michael D. Jernigan

_____ (SEAL)
Linda P. Jernigan

STATE OF North Carolina

COUNTY OF Wake

I, CAROLYN D SZABO          a Notary Public of the County
and State aforesaid do hereby certify that John R. Jernigan and
wife, Laura A. Jernigan, personally appeared before me this date
and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and Notarial Seal, this the 14 day of
Jan               , 20

My commission expires:

2/13/2010                    _____
                             Notary Public

BOOK 1332 PAGE 42

-4-

STATE OF North Carolina
COUNTY OF Carteret

I, Amanda L. Johnson   a Notary Public of the County
and State aforesaid do hereby certify that James D. Jernigan and

wife, Kaye R. Jernigan, personally appeared before me this date
and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and Notarial Seal, this the 18th day of
January, 2010.

My commission expires:
May 18, 2013

                                    Amanda Johnson
                                    Notary Public

STATE OF Florida
COUNTY OF Leon

I, Doyle Browning   a Notary Public of the County
and State aforesaid do hereby certify that Michael D. Jernigan
and wife, Linda P. Jernigan, personally appeared before me this
date and acknowledged the due execution of the foregoing
instrument.

WITNESS my hand and Notarial Seal, this the 16th day of
January, 2010.

My commission expires:
July 23, 2013

                                    Notary Public

DOYLE BROWNING
Commission # DD 910184
Expires July 23, 2013
Bonded Thru Troy Fain Insurance 800-385-7019

BOOK 1332 PAGE 42